**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **BREANNA JOHNSON,**<br>*Plaintiff,*<br><br>**v.**<br><br>**THE PNC FINANCIAL SERVICES GROUP, INC. d/b/a PNC BANK,**<br>*Defendant.* | **Civil No. 24-5283** |

**MEMORANDUM**

**Costello, J.** **August 12, 2026**

Plaintiff Breanna Johnson was employed by Defendant PNC Financial Services Group. In response to a series of complaints about her work performance, Defendant warned Plaintiff that she needed to make certain improvements. Shortly thereafter, Plaintiff requested, and Defendant granted, medical leave under the Family and Medical Leave Act, 29 U.S.C. § 2601, *et seq*. ("FMLA"). Two days into her leave, Plaintiff mass deleted all of her work emails. According to Plaintiff, she did this to thwart her manager's efforts to use her work to transition her responsibilities to other employees while Plaintiff was on leave. After an HR investigation, Defendant determined that Plaintiff's email deletion violated two company policies. Defendant accordingly terminated Plaintiff. Plaintiff now brings this action for retaliation and interference under the FMLA. Defendant moves for summary judgment on both claims. For the reasons that follow, the Court will grant Defendant's motion.

# I. BACKGROUND[1]

## A. Plaintiff's Job Performance & the Verbal Warning

Plaintiff Breanna Johnson worked for Defendant PNC Financial Services Group as a Trust Real Estate Advisor II ("TREA II"). ECF No. 15-25 ¶ 1. She held this position between November 9, 2020 and June 28, 2024. *Id.*

As a TREA II, Plaintiff worked with Defendant's fiduciary advisors to manage real estate properties in the mid-Atlantic which were held in trusts or estates, including trusts benefiting minors and individuals with disabilities. *Id.* ¶ 8. "In this role, Plaintiff was responsible for all aspects of property management, such as bill-paying, landscaping, maintenance, repairs, utilities, insurance[,] and whatever else the properties required." ECF No. 15-1 at 2 (citing ECF No. 15-25 ¶ 9). Plaintiff was also responsible for conducting annual inspections that required her to physically visit the various properties she managed and to directly interact with clients and relatives of clients. ECF No. 15-25 ¶¶ 10-11.

Plaintiff reported to Director of Trust Real Estate Emily Mogen. *Id.* ¶¶ 2-3. When any TREAs took leave or time off, Mogen would access their files and emails to coordinate a coverage plan for their properties. *Id.* ¶ 13.

In May and June of 2024, Mogen received multiple complaints about Plaintiff from both clients and coworkers. *Id.* ¶ 39. These complaints accused Plaintiff of failing to pay bills on time, complete projects for certain properties, and communicate with clients and management. *Id.* ¶ 41. As a result of these complaints, Mogen issued a verbal warning to Plaintiff on June 14,

[1] Unless indicated otherwise, facts cited throughout this section are undisputed. Plaintiff generally disputes characterizations of documents cited by Defendant but does not dispute the authenticity or admissibility of the underlying documents or the facts contained therein. *See generally* ECF No. 17-2.

2024. *Id.* ¶ 42. Mogen advised Plaintiff that she needed to improve her "communication and follow-up with partners, co-workers, and clients; communication to manager regarding time out of office . . . and timely escalations to management." *Id.* ¶ 44 (cleaned up). Mogen also reminded Plaintiff that she was expected to complete her annual inspections and "perform at the level of a TREA II" by more proactively managing her portfolio. *Id.* ¶¶ 45-46.

After Mogen delivered the verbal warning, Plaintiff called HR and accused Mogen of retaliating against her. *Id.* ¶ 47. She specifically alleged that the verbal warning was issued in retaliation for a prior complaint Plaintiff lodged about a racially insensitive remark made by the mother of a beneficiary of a trust with a property managed by Plaintiff. *Id.* ¶¶ 30-38, 47.

### B. Plaintiff's Mass Deletion of Her Work Emails

The following week, Mogen and Plaintiff had a meeting scheduled to discuss follow-up issues related to the verbal warning. *Id.* ¶ 48. Plaintiff declined the meeting at the last minute, and Mogen could not reach her. *Id.* After consulting HR about how to proceed, Mogen called Plaintiff. *Id.* ¶¶ 49-50. Plaintiff picked up, told Mogen to "speak with HR," then hung up the phone. *Id.* ¶ 51.[2]

Mogen subsequently learned that Plaintiff applied for FMLA leave on June 18, 2024. *Id.* ¶¶ 48, 52. Consistent with standard practice, Mogen began taking steps to transition Plaintiff's portfolio to other TREAs while Plaintiff was on leave. *Id.* ¶ 52. This included Mogen accessing Plaintiff's work email. *Id.* ¶ 53.

When Mogen logged into Plaintiff's work email on June 20th, Plaintiff's emails had been entirely deleted. *Id.* ¶ 55. Plaintiff admitted that she was the one who deleted all her work

---

[2] Plaintiff does not dispute that she told Mogen to speak to HR, but disputes that she hung up immediately after that remark. *See* ECF No. 17-2 ¶ 51(a).

emails. *Id.* ¶ 58. Defendant's IT department was able to recover the deleted messages. But had IT not been able to do so, Plaintiff "would have crippled [Defendant's] ability to manage the 35-40 properties in Plaintiff's portfolio." ECF No. 15-1 at 6; *see also* ECF No. 15-25 ¶ 65; ECF No. 15-15 ¶ 11. Mogen promptly escalated the situation to her manager and to HR. ECF No. 15-25 ¶¶ 64-66.

### C. The HR Investigation

HR received notice of Plaintiff's earlier retaliation complaint against Mogen and of Plaintiff's email deletion at the same time and investigated both incidents. *Id.* ¶ 67. HR concluded that Plaintiff's retaliation complaint was unfounded. The investigation found that Mogen issued a verbal warning to Plaintiff "solely because of the performance issues" Mogen described "and not from any retaliatory motive." *Id.* ¶ 73.

During HR's investigation into the email deletion incident, Plaintiff admitted that she deleted her emails. *Id.* ¶¶ 74-75. Plaintiff explained that she "emptied [her] emails out" because she "wanted [Mogen] to start from ground zero" and "to have to work for it" because "if [Mogen] was unhappy with [Plaintiff's] work, there was no need to use [it]." *Id.* ¶¶ 57-58.

HR recommended terminating Plaintiff's employment, a decision with which Mogen, Mogen's manager, and an additional manager agreed. *Id.* ¶¶ 75-78. HR and management decided that termination was appropriate because Plaintiff's conduct violated Defendant's explicit policy against removing or destroying company property, including work emails. *Id.*; *see also id.* ¶ 18 (setting forth Defendant's "Use of Corporate Property" policy).

HR and management also believed that Plaintiff's conduct violated Defendant's Fidelity Bonding policy, which provides that employees must be "truthful and honest at all times when working for and/or representing [Defendant]." *Id.* ¶ 79; *see also id.* ¶ 17 (setting forth

Defendant's "Fidelity Bonding" policy). The HR investigation concluded that Plaintiff's deletion of emails demonstrating her poor performance, such as emails showing past-due bills and complaints about Plaintiff's lack of responsiveness, demonstrated dishonesty in violation of the Fidelity Bonding policy.[3] *Id.* ¶ 79. HR called Plaintiff on June 28th and informed her she was terminated for deleting her work emails. *Id.* ¶ 81.

### D. The Instant Action & Defendant's Motion

Plaintiff subsequently brought this suit for retaliation and interference under the FMLA. *See generally* ECF No. 1. Plaintiff contends that Defendant terminated her in retaliation for taking FMLA leave and interfered with her rights to take leave and to job restoration. *See* ECF No. 17-1 at 1.

Defendant moved for summary judgment on both claims. *See generally* ECF No. 15. Defendant argues that Plaintiff's retaliation claim fails because she cannot show a causal connection between her FMLA activity and termination. ECF No. 15-1 at 9-13. Namely, Defendant argues that any causal link between Plaintiff's leave and termination was broken when she deleted her emails in violation of company policy. *Id.* at 11-13. Defendant argues that Plaintiff's interference claim is barred because it is duplicative of her retaliation claim. *Id.* at 13-15.

Plaintiff opposed the motion. *See generally* ECF No. 17-1. Plaintiff argues that the close temporal proximity between her taking FMLA leave and her termination is sufficient to establish the causation element of her retaliation claim. *See id.* at 4-6. She further argues that she can establish that Defendant's reasons for terminating her were pretextual because "Defendant did

[3] During her interview with HR, Plaintiff denied deleting emails to hide information about her performance issues, but HR found her denial was "not credible." *Id.*

not lose any of Plaintiff's emails," Defendant "skipp[ed] steps in its disciplinary procedures," and "Plaintiff was honest in the investigation regarding her actions[.]" *Id.* at 7-8. Plaintiff also contends that she can establish pretext via evidence that similarly situated comparators were treated more favorably. *Id.* at 8. Finally, Plaintiff argues that although her retaliation and interference claims are based on the same facts, courts routinely consider both and do not dismiss the interference claims as duplicative. *Id.* at 9-11.

## II. LEGAL STANDARD

Summary judgment is appropriate if the movant shows "that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "To defeat a motion for summary judgment, there must be a factual dispute that is both material and genuine." *Bennett v. SEPTA*, 23cv1271, 2024 WL 404959, at *6 (E.D. Pa. Feb. 2, 2024), *aff'd sub nom.*, *Bennett v. Se. Pa. Transp. Auth.*, 24cv1376, 2025 WL 1248815 (3d Cir. Apr. 30, 2025). A fact is material if it "might affect the outcome of the suit under the governing law[.]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a material fact is "genuine" if, "based on the evidence, 'a reasonable jury could return a verdict for the nonmoving party.'" *Bennett*, 2024 WL 404959, at *6 (quoting *Anderson*, 477 U.S. at 248).

The movant bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *Goldenstein v. Repossessors Inc.*, 815 F.3d 142, 146 (3d Cir. 2016). "When the movant is the defendant, they have the burden of demonstrating that the plaintiff 'has failed to establish one or more essential elements of her case.'" *Bennett*, 2024 WL 404959, at *6 (quoting *Burton v. Teleflex Inc.*, 707 F.3d 417, 425 (3d Cir. 2013)). "In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). "If Plaintiff fails to raise a genuine dispute of material fact as to any element of his prima facie case, summary judgment in favor of Defendant is warranted." *Hanafy v. Hill Int'l, Inc.*, 669 F. Supp. 3d 419, 433 (E.D. Pa. 2023) (citing *Geraci v. Moody-Tottrup, Int'l, Inc.*, 82 F.3d 578, 580 (3d Cir. 1996)).

The Court does not weigh evidence or make credibility determinations at the summary judgment stage. Rather, it simply determines "whether there is a genuine issue for trial." *Bennett*, 2024 WL 404959, at *6 (citing *Anderson*, 477 U.S. at 249). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient" to create a triable issue; "there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

## III. DISCUSSION

### A. FMLA Retaliation Claim

#### 1. Elements of Claim

"The FMLA provides that it 'shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right' that it guarantees." *Budhun v. Reading Hosp. & Med. Ctr.*, 765 F.3d 245, 252 (3d Cir. 2014) (quoting 29 U.S.C. § 2615(a)(1)). To succeed on an FMLA retaliation claim based on circumstantial evidence, a plaintiff must show that "(1) she invoked her right to FMLA-qualifying leave, (2) she suffered an adverse employment decision, and (3) the adverse action was causally related to her invocation of rights." *Id.* at 256 (quoting *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 302 (3d Cir. 2012)).

If a plaintiff can establish each element of her prima facie case, then the burden shifts to the employer to demonstrate a legitimate, non-retaliatory reason for the adverse action. *Budhun*,

765 F.3d at 256 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). If the employer meets this "minimal burden," the burden shifts back to the plaintiff to point to direct or circumstantial evidence that the employer's proffered reasons are pretextual. *Id.* (citing *Lichtenstein*, 691 F.3d at 302).

2. Causation

The parties here only dispute the causation element of Plaintiff's prima facie case. *See* ECF No. 15-1 at 9-13; ECF No. 17-1 at 5-6. "To demonstrate a causal connection, a plaintiff must generally show 'either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link.'" *Budhun*, 765 F.3d at 258 (quoting *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007)).

Mogen learned that Plaintiff requested FMLA leave on June 18, 2024. ECF No. 15-25 ¶ 52. Plaintiff was terminated ten days later on June 28, 2024. *Id.* ¶ 81. Plaintiff argues that this timing is sufficient to establish a causal connection between her request for FMLA leave and her termination. ECF No. 17-1 at 6. The Third Circuit is "reluctant to infer a causal connection based on temporal proximity alone." *Budhun*, 765 F.3d at 258. Nevertheless, courts have found that various periods—from a few days, to a week, to a few months—between the protected activity and adverse employment action may be "unusually suggestive" enough to establish causation at summary judgment. *Id.* (collecting cases in Third Circuit and sister circuits). The Court need not determine whether the ten days between Plaintiff's request for FMLA leave and her termination is "unduly suggestive" enough to establish causation. That is because Plaintiff's mass deletion of her emails on June 20, 2024 broke the causal chain.

Courts in the Third Circuit routinely decline to infer a causal connection where there was an "intervening event"—typically misconduct by the plaintiff—between the protected activity and the adverse employment action. *See Wright v. Providence Care Ctr., LLC*, 17cv0747, 2019 WL 4643592, at *14-15 (W.D. Pa. Sept. 24, 2019), *aff'd*, 822 F. App'x 85 (3d Cir. 2020); *Outten v. Genesis Health Care, LLC*, 13cv4708, at *12 (E.D. Pa. Aug. 12, 2014) ("a causal link between an employee's protected activity and an adverse employment action against that employee may be broken by intervening events").

For instance, in *Calero v. Cardone Industries, Inc.*, the plaintiff was granted intermittent medical leave under the FMLA. 11cv3192, 2012 WL 2547356, at *2 (E.D. Pa. Jun. 29, 2012). The plaintiff was terminated a few weeks later because he lied about his arrival times to his supervisor. *Id.* at *2-3. The court held that any temporal proximity between his FMLA leave and termination was "wholly refuted by" the undisputed record evidence demonstrating the plaintiff's misconduct. *Id.* at *8.

Similarly, in *Weiler v. R&T Mechanics, Inc.*, the plaintiff complained about a manager's sexual harassment of another employee. 255 F. App'x 665, 667 (3d Cir. 2007). A few weeks later, the plaintiff unilaterally dismantled the construction crew for a job site he was responsible for overseeing. *Id.* Two days after that, the plaintiff was fired for job abandonment and "extreme and unacceptable losses." *Id.* The Third Circuit affirmed the district court's grant of summary judgment on the plaintiff's Title VII retaliation claim, holding that "a crucial intervening fact broke the causal chain[.]" *Id.* at 668-69.[4] The plaintiff's abandonment violated the defendant's employee handbook and was grounds for immediate discharge. *Id.* at 669; *see*

[4] Courts in the Third Circuit often look to Title VII jurisprudence as "helpful guidance" in FMLA retaliation cases. *Grosso v. Fed. Exp. Corp.*, 467, F. Supp. 2d 449, 458 (E.D. Pa. 2006) (internal quotations omitted).

*also, e.g.*, *Wright*, 2019 WL 4643592, at *15 (plaintiff's verbal altercation with co-worker in violation of employer's policy prohibiting disorderly conduct broke causal chain between FMLA leave and termination); *Outten*, 2014 WL 3964918, at *12-13 (plaintiff "broke the causal link" between return from FMLA leave and termination "when she undisputedly engaged in conduct that went against a known practice" of her employer).

Here, it is undisputed that two days after she requested FMLA leave, Plaintiff deleted her emails in violation of Defendant's "Use of Corporate Property" policy. ECF No. 15-25 ¶ 18 (showing it is violation of policy to remove company property, including emails); *id.* ¶ 62 (Plaintiff admitting she deleted her emails in violation of the policy).[5] Like the misconduct of the plaintiffs in *Calero* and *Weiler*, Plaintiff's violation of company policy was an "intervening event" that negates any inference of causation that could be drawn from the temporal proximity between her taking of FMLA leave and her termination. *See Wright*, 2019 WL 4643592, at *14. Plaintiff "cannot avoid the consequences of her very serious misconduct by pointing to protected activities that bear no discernable relationship to her impermissible behavior." *See Wright*, 822 F. App'x at 95.

Plaintiff has not demonstrated the existence of a triable issue on the causation element of her FMLA retaliation claim.[6] The Court need not reach the remaining steps in the *McDonnell-*

[5] Defendant argues that Plaintiff's conduct also violates its Fidelity Bonding policy. *See* ECF No. 15-1 at 2-3, 8. Plaintiff disputes that she violated this policy. *See* ECF No. 17-1 at 7 ("Plaintiff was honest in the investigation regarding her actions with the emails so termination based on acts of dishonesty" was unwarranted). The Court need not reach the question of whether Plaintiff violated the Fidelity Bonding policy because Plaintiff clearly violated the Use of Corporate Property policy. *See* ECF No. 17-2 ¶ 62(a) (Plaintiff admitting that she read the employee handbook and agrees the emails she deleted were covered by Defendant's Use of Corporate Property policy).

[6] Plaintiff does not attempt to establish causation through the other avenue, "a pattern of antagonism coupled with timing." *See Budhun*, 765 F.3d at 258 (internal quotations omitted);

*Douglas* burden-shifting framework. Defendant is entitled to summary judgment on this claim. *See Celotex*, 477 U.S. at 323-24 (plaintiff's failure to raise triable issue as to any element of her prima facie case requires entry of summary judgment on that claim).

### B. FMLA Interference Claim

To state a claim for FMLA interference, a plaintiff must demonstrate that (1) she was entitled to benefits under the FMLA and (2) she was denied them. *Callison v. City of Philadelphia*, 430 F.3d 117, 119 (3d Cir. 2005). Plaintiff argues that she was denied benefits under the FMLA because she was terminated, which she claims "interfered with her right to take job protected leave and to return to her position." ECF No. 17-1 at 10. This argument fails for two reasons.

First, Plaintiff's interference claim is fundamentally a retaliation claim. The parties agree that Plaintiff's interference claim is based on her allegation that Defendant terminated her for seeking FMLA leave. *See* ECF No. 17-1 at 10 (Plaintiff conceding that her retaliation and interference claims "are based on the same facts"—i.e., Defendant's termination "for asserting her FMLA rights"); ECF No. 18 at 6. It is well-settled that where a plaintiff's interference claim is based on an allegation that the employer took an adverse action because the plaintiff requested FMLA leave, the interference claim "is, in essence, identical to her retaliation claim[.]" *Atchison v. Sears*, 666 F. Supp. 2d 477, 489 (E.D. Pa. 2009) (internal quotations and citation omitted); *accord Yandrisevitz v. H.T. Lyons, Inc.,* 08cv1444, 2009 WL 2195139, at *9-10 (E.D. Pa. July 22, 2009); *Mascioli v. Arby's Rest. Grp., Inc.*, 610 F. Supp. 2d 419, 429-30 (W.D. Pa. 2009).

---

*see* ECF No. 17-1 at 5-6 (arguing only that the temporal proximity between her FMLA leave and termination supports an inference of a causal connection).

This distinction matters because an FMLA retaliation claim is subject to the *McDonnell-Douglas* burden-shifting framework, but an interference claim is not. *Atchison*, 666 F. Supp. 2d at 489 (citing *Callison*, 430 F.3d at 119). For a retaliation claim, an employer may justify the adverse action by pointing to a legitimate business decision, but that is not a defense in an interference claim. *Id.* Plaintiff "cannot escape the *McDonnell-Douglas* analysis . . . merely by affixing an 'interference' label to one of [her] duplicative claims." *See id.* Thus, the Court cannot consider Plaintiff's interference claim as separate and distinct from her retaliation claim. *See Lichtenstein*, 598 F. App'x at 114 ("the difference in burdens of proof alone will not allow [Plaintiff] to go forward with an interference claim that is in form and substance . . . a claim for retaliation") (internal quotations omitted).

Second, even if the Court could consider Plaintiff's claim under the interference framework, it would not survive summary judgment. To the extent Plaintiff is arguing that her termination interfered with her ability to take leave under the FMLA, that is not supported by the record. *See* ECF No. 17-1 at 10 (arguing that Plaintiff's termination "interfered with her right to take job protected leave"). Plaintiff does not point to any evidence showing that she was not granted the FMLA leave she requested. Indeed, Plaintiff was *already on* FMLA leave when she deleted the emails. *See* ECF No. 17-2 ¶ 57 (citing Plaintiff's testimony that she "went out on FMLA leave" and that is when she decided to delete her emails).

To the extent Plaintiff is arguing that her termination interfered with her right to reinstatement, that position also fails. The FMLA does not confer an unfettered right to job restoration. The statute is specifically qualified by a directive "that it does not entitle a restored employee to a right, benefit or position to which the employee would 'not have been entitled had the employee not taken the leave.'" *Conoshenti v. Pub. Serv. Elec. & Gas Co.,* 364 F.3d 135, 141

(3d Cir. 2004) (quoting 29 U.S.C. § 2614(a)(3)(B)); *see also* 29 C.F.R. § 825.216(a) ("an employee has no greater right to reinstatement or to other benefits and conditions of employment than if the employee had been continuously employed during the FMLA leave period"). "Thus, for example, if an employee is discharged during or at the end of a protected leave for a reason unrelated to the leave, there is no right to reinstatement." *Conoshenti*, 364 F.3d at 141; *accord Atchison*, 666 F. Supp. 2d at 487-88; *Yandrisevitz*, 2009 WL 2195139, at *10.

As discussed at length above, the undisputed record demonstrates that Plaintiff was terminated because of her misconduct. She admits that she mass deleted her work emails out of spite for her supervisor and in violation of at least one of Defendant's policies. *See supra* at 8, 10 & n.5. She has no right to reinstatement under the FMLA. Because Defendant did not deprive Plaintiff of any right to which she was statutorily entitled, her interference claim fails and the Court will grant summary judgment for Defendant.

## IV. CONCLUSION

Plaintiff's blatant misconduct broke any causal chain that could warrant an inference her termination was retaliation for her taking FMLA leave. Her misconduct also means she did not have a right to be reinstated after her leave. The Court accordingly grants Defendant's motion for summary judgment on both of Plaintiff's claims. An appropriate Order will follow.

**BY THE COURT:**

MARY KAY COSTELLO
United States District Judge